1

2 *E-FILED 11/5/08*

3

4

5

6 IN THE UNITED STATES DISTRICT COURT

7 FOR THE NORTHERN DISTRICT OF CALIFORNIA

8 SAN JOSE DIVISION

9 NANCY McCAA,                                    NO. C 07-5322 RS

10          Plaintiff,                     **ORDER DENYING CROSS
                                           MOTIONS FOR SUMMARY
11   v.                                    JUDGMENT AND GRANTING
                                           MOTION TO REMAND**
12 MICHAEL ASTRUE,
   Commissioner of Social Security,

13

14          Defendant.
   _____/

15                          I. INTRODUCTION

16          Plaintiff Nancy McCaa challenges the final decision of the Commissioner of Social

17 Security ("the Commissioner") denying her request for disability income benefits.  McCaa filed

18 a motion for summary judgment or in the alternative, a motion to remand.  The Commissioner

19 similarly filed for summary judgment.  The matter was submitted without oral argument.  For the

20 reasons set forth below, the motions for summary judgment are denied, and the motion to

21 remand is granted.

22                          II. BACKGROUND

23          McCaa is a fifty-two year old woman with a high school education.  (AR 342).[1]  Prior to

24 the events leading up to her application for disability benefits, McCaa worked for twenty years

25

26          [1]      "AR" refers to the certified administrative record submitted with the pending

27 motions.

28                                        1

as a budget administrator at Stanford University. (AR 343). Over those years, McCaa alleges that she had several bouts of depression. (AR 171-72). In March 2004, she lost her employment with Stanford University and shortly thereafter, she was hospitalized following a breakdown. (AR 344). McCaa alleges that she was suicidal, often unable to focus, chronically late, depressed, and involved in several car accidents following her breakdown. (AR 303, 345, 352). In July 2004, McCaa attempted to return to work but failed. (AR 344). On September 23, 2004, McCaa filed an application for disability income benefits, alleging disability beginning March 4, 2004. (AR 13).

In August 2004, treating psychiatrist Dr. Prija Vankatesh diagnosed McCaa with Bipolar disorder. (AR 213). In June 2005, a psychological consultant for the Commissioner similarly found that McCaa suffered from Bipolar I disorder and determined McCaa's Global Assessment of Functioning[2] ("GAF") was 45. (AR 175). On July 10, 2006, Dr. Vankatesh diagnosed McCaa as having Bipolar II disorder[3] with recurrent major depression, Borderline Personality Disorder, and a GAF of 50. (AR 306-10). Dr. Vankatesh identified manic and depressive symptoms, and determined that McCaa was unable to complete certain work functions to a level meeting competitive standards. *Id.* Dr. Vankatesh noted that McCaa had no useful ability to function and exhibited extremely poor coping skills, mood instability, difficulty with focus and

---

[2]	A person's Global Assessment of Functioning is a subjective determination representing the clinician's judgment of the individual's overall level of psychological, social, and occupational functioning. The GAF scale ranges from 100 (superior functioning) to 1 (persistent danger of severely hurting oneself or others, persistent inability to maintain minimum personal hygiene, or serious suicidal act with clear expectation of death). A GAF between 41-50 indicates serious symptoms or any serious impairment in social, occupational or school functioning. A GAF between 51-60 indicates moderate symptoms or moderate impairment in those functioning areas.

[3]	Bipolar disorder is subdivided into a range often described as the bipolar spectrum. The types of disorder are divided by the severity of mood episodes experienced. They include bipolar I, bipolar II, cyclothymia, and other types. Bipolar I disorder is characterized by at least one manic or mixed episode with possible episodes of hypomania or major depression. Bipolar II disorder is characterized by hypomanic episodes as well as at least one major depressive episode.

distractibility. *Id.* In September 2006, McCaa's husband died. (AR 346). In November 2006, McCaa was hospitalized on a California Welfare and Institutions Code Section 5150 psychiatric hold and treated for sleep impairment, type II diabetes, and depression. (AR 314-15). McCaa's patient progress reports and discharge summary reflected that she was obese, stopped taking her medication, and was abusing methamphetamine, marijuana, and alcohol. (AR 314-18, 326-29).

McCaa's September 2004 application for disability insurance benefits was denied. (AR 13). McCaa petitioned for and was granted a hearing before an Administrative Law Judge ("ALJ"). *Id.* On December 7, 2006, the ALJ held a hearing in which McCaa was present and represented by an attorney. *Id.* On March 2, 2007, the ALJ denied McCaa's claim in a written decision. (AR 21). The ALJ found McCaa possessed symptoms and limitations of being easily distracted, not able to focus, no interest, and depression. (AR 17). However, the ALJ found that McCaa's substance abuse was a materially contributing factor in her disability. (AR 20). McCaa was diagnosed with polysubstance dependance by Dr. Vankatesh in November 2006. (AR 329). McCaa admitted that in the past two years, she huffed compressed air, drank a liter of rum daily, smoked methamphetamine almost daily, consumed Triple C (Coricidin Cough & Cold pills) by the box, smoked marijuana, and took ecstasy. (AR 324). The ALJ determined that if McCaa stopped the substance abuse, she would have the residual functional capacity sufficient to perform light work and would not be disabled. (AR 18-20). McCaa sought but was denied administrative review by the Appeals Council, making the ALJ's decision final. (AR 5-8). Subsequently, McCaa commenced the instant action pursuant to 42 U.S.C. § 405(g).

III. LEGAL STANDARD

A.    <u>Standard for Reviewing the Commissioner's Decision</u>

This Court reviews the Commissioner's decision to deny benefits pursuant to 42 U.S.C. § 405(g). The decision of the Commissioner may be reversed only if it is not supported by substantial evidence or if it is based on legal error. *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is "such relevant evidence as a reasonable mind might accept as

1    adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  It is more

2    than a scintilla but less than a preponderance.  *Tackett,* 180 F.3d at 1098.  If the evidence is

3    susceptible to more than one rational interpretation, the court may not substitute its judgment for

4    that of the Commissioner.  *Id.*

5    B.    Standard for Determining Disability

6         A person is "disabled" for the purposes of receiving Social Security Benefits if he or she

7    is unable to engage in any substantial gainful activity due to a medically determinable physical

8    or mental impairment which is expected to result in death or which has lasted or can be expected

9    to last for a continuous period of not less than twelve months.  42 U.S.C. § 423(d)(1)(A).  In

10   evaluating whether a claimant is disabled, the Commissioner must follow a five step sequential

11   inquiry.  20 C.F.R. §§ 404.1520, 416.920; *Lester v. Chater*, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

12   The burden is on the claimant to prove that: (1) she is not working; (2) she has a severe

13   medically determinable impairment that is expected to last more than twelve months; and either

14   (3) that impairment is severe enough to meet or equal an impairment listed as a priori disabling

15   without further vocational-medical evidence; or (4) the impairment causes such functional

16   limitations that she cannot do her past relevant work.  20 C.F.R. § 404.1520(a)(4)(I)-(iv).  If the

17   claimant successfully proves she cannot do her past work, then the burden shifts to the

18   Commissioner to show at step five that the claimant can perform other work that exists in

19   significant numbers in the economy; otherwise, the claimant will be found disabled.  *Id.*; *Gallant*

20   *v. Heckler*, 753 F.2d 1450, 1456 (9th Cir. 1984).

21        If the claimant is found to be disabled but there is medical evidence of drug addiction or

22   alcoholism ("DAA"), the ALJ must conduct a drug abuse and alcoholism analysis by

23   determining which of the claimant's disabling limitations would remain if the claimant stopped

24   using drugs or alcohol.  20 C.F.R. §§ 404.1535(b); *Bustamante v. Massanari*, 262 F.3d 949, 955

25   (9th Cir. 2001).  The Social Security Act bars payments of benefits when drug addiction and/or

26   alcoholism is a contributing factor material to a disability claim.  42 U.S.C. §§ 423(d)(2)(C),

27

28                                                    4

1   1382(a)(3)(J); *Sousa v. Callahan*, 143 F.3d 1240, 1245 (9th Cir. 1998).  It is plaintiff's burden to

2   show that DAA is not a contributing material factor to his or her disability.  *Ball v. Massanari*,

3   254 F.3d 817, 822-23 (9th Cir. 2001).

4   IV. DISCUSSION

5       McCaa asserts several challenges to the ALJ's decision.  McCaa argues that the ALJ

6   improperly: (1) rejected the medical opinion evidence; (2) supported its substance abuse findings

7   without substantial evidence; (3) discounted McCaa's symptom reporting; and (4) based his

8   decision exclusively on medical vocational guidelines in finding that McCaa would be able to

9   perform other work that exists in significant numbers in the economy.

10  A.    ALJ's Consideration of the Medical Opinion

11      McCaa argues that the ALJ improperly discounted the opinions of treating physician Dr.

12  Venkatseh and consultative examining psychologist Dr. Ute Kollath.  Greater weight usually is

13  given to the treating physician's opinion but that opinion is not always binding.  *Batson v.*

14  *Comm'r of Soc. Sec. Admin*., 359 F.3d 1190, 1195 (9th Cir. 2004).  In the case of a conflict, the

15  ALJ may reject a treating or examining physician's opinion if specific, legitimate reasons are

16  given.  *See Flaten v. Sec'y of Health & Human Serv*., 44 F.3d 1453, 1463 (9th Cir. 1995).  If the

17  treating or examining physician's opinion is not contradicted, the opinion can only be rejected

18  with "clear and convincing" reasons.  *Lester*, 81 F.3d at 830.  The opinion of a nonexamining

19  physician cannot by itself constitute substantial evidence justifying rejection of the opinion of

20  either a treating or examining physician.  *Id.* at 831.  Nevertheless, a nonexamining physician's

21  opinion may constitute substantial evidence if it is supported by other evidence in the record.  *Id.*

22

23      Here, the ALJ accorded little weight to opinion evidence from the July 10, 2006 mental

24  residual functioning capacity questionnaire completed by treating psychiatrist, Dr. Venkatesh,

25  and treating therapist, Patricia Eaton.  The ALJ found that the residual functioning capacity

26  questionnaire was inconsistent with the progress notes and the current and past GAF

27

28                                          5

1    assessments.  In the questionnaire, Dr. Venkatesh and Eaton identified symptoms displayed by

2    McCaa to include extremely poor coping skills, easy distractibility, mood disturbance, difficulty

3    thinking or concentrating, poor impulse control, change in personality, bipolar syndrome with a

4    history of manic and depressive syndromes, memory impairment, recurrent severe panic attacks,

5    and pathological inappropriate suspiciousness or hostility.  (AR 307, 310).  Dr. Venkatesh and

6    Eaton additionally opined that McCaa has either no useful ability to function in the workplace or

7    is unable to meet competitive standards of ability and aptitudes necessary to do unskilled work.

8    (AR 308-9)*.  Both also remarked that though they could not speak to McCaa's IQ, her GAF had

9    previously been in the 40's.  (AR 309).  At the time of the assessment, Dr. Venkatesh and Eaton

10   wrote that McCaa's GAF was currently 50 but had been as high as 65 in the past year.  (AR

11   306).

12          In contrast, the ALJ accorded significant weight to the opinions of Dr. Kollath, the

13   consultative psychological examiner, and the nonexamining Disability Determination Services

14   ("DDS") medical consultant.  (AR 17).  The ALJ acknowledged Dr. Kollath's opinion that

15   McCaa's mental health issues made it unlikely that she would be able adequately to cope with

16   the challenges and demands of the workplace.  Yet, he disregarded that judgment in favor of the

17   medical consultant's determination and Dr. Kollath's other evaluation finding that McCaa's

18   memory functioning, intellectual functioning, perception, speech, judgment all to be within

19   normal range.  *Id.*  The medical consultant opined (contrary to the opinion of the treating

20   physician and therapist) that McCaa's ability for sustained concentration and persistence, her

21   ability to engage in social interaction, and her ability for adaptation at work or work related

22   settings were either not significantly limited or at the most moderately limited.  *Id.*

23          As explained above, the medical consultant's opinion alone would not constitute

24   substantial evidence to justify rejecting the examining physician's opinion.  *Lester*, 81 F.3d at

25   831.  However, considering the supporting evidence of McCaa's significant drug and alcohol

26   abuse, the ALJ did not improperly discount the opinions of the treating physician and the

27

28                                                    6

1   examining psychologist who had little or no information regarding McCaa's drug abuse at the

2   time of their relative assessments.  Relying on the medical evidence of record, the ALJ

3   concluded that McCaa's psychiatric symptoms would not be so limiting if she abstained from

4   drug use and remained compliant with medication protocols.  McCaa's medical record shows

5   that throughout 2004 and most of 2005, where there was no significant indication of drug or

6   alcohol abuse, McCaa functioned well and had GAF's mostly in the 50's and 60's with a high of

7   65.  (AR 240, 236, 214, 213, 304, 312, 280, 282, 276).  In periods of 2005, and 2006, when the

8   medical record notes that McCaa began to abuse alcohol and drugs heavily, and was non

9   compliant with her medication, her GAF's dropped significantly below 50.  (AR 314, 306, 329,

10  175, 201, 287).  During November 2006, when McCaa admitted to drinking a liter of rum daily,

11  abusing methamphetamine, huffing compressed air, smoking marijuana, consuming ecstasy, and

12  non compliance with her medication, her GAF was 25 and she was placed on a psychiatric hold.

13  (AR 324, 314).  Accordingly, the ALJ provided specific and legitimate reasons supported by

14  substantial evidence for assigning little weight to the treating physician's opinion and

15  disregarding a portion of the opinion of the consultative psychological examiner.

16  B.    ALJ's Finding that the Substance Abuse was Material

17          McCaa contends that the ALJ's decision that abstinence would reduce plaintiff's mental

18  functioning from listing level depression to just mild limitations was speculation unsupported by

19  medical evidence.  The claimant in a disability determination action bears the burden of proving

20  that drug or alcohol addiction is not a contributing factor material to his or her disability.  *Parra*

21  *v. Astrue*, 481 F.3d 742, 748 (9th Cir. 2007).  If there is substantial evidence to support the

22  administrative findings, or if there is conflicting evidence that will support a finding of either

23  disability or non disability, the finding of the Commissioner is conclusive.  *Sprague v. Bowen*,

24  812 F.2d 1226, 1229-1230 (9th Cir. 1987).

25          McCaa argues that she clearly met her burden of showing the non materiality of the

26

27  ORDER DENYING CROSS MOTIONS FOR SUMMARY JUDGMENT, AND GRANTING MOTION FOR
    REMAND
    Case No. 07-5322 RS

28

1    substance abuse.  The treating psychiatrist, Dr. Venkatesh, opined that alcohol or substance

2    abuse did not contribute to his patient's limitations.  (AR 310).  The ALJ recognized that

3    McCaa's medically determinable impairments could reasonably be expected to produce the

4    alleged symptoms suffered but found that McCaa's statements concerning the limiting effects of

5    her symptoms were not credible.  (AR 19).  Absent drug and alcohol abuse, McCaa's mental

6    health issues and obesity would not be so sever as to preclude all work.  The ALJ properly relied

7    on the record which shows that periods in which McCaa's symptoms were most severe were

8    precipitated by non compliance with medication and/or drug and alcohol abuse.  McCaa's

9    hospitalizations, except for the incident shortly after she left Stanford, involved just such abuse.

10   Having determined that the ALJ did not improperly discount the treating physician's opinion, the

11   ALJ's materiality determination is supported by substantial evidence.

12   C.     ALJ's Consideration of McCaa's Symptom Reporting

13           McCaa contends that because the ALJ made no findings regarding McCaa's written

14   statements, did not refer to or reject Dr. Venkatesh's statement that McCaa was not a malingerer,

15   and made no finding at all about the observations and written reports of lay persons, this Court is

16   required to remand for proper consideration of McCaa's symptom reporting.  Where a claimant

17   has produced medical evidence of impairments that could cause the type of reported symptoms

18   or complaints, and there is no evidence of malingering, the ALJ must have "clear and convincing

19   reasons" for rejecting the claimant's testimony.  *Lester,* 81 F.3d at 834.  General findings are

20   insufficient; the ALJ must identify what testimony is not credible and what evidence undermines

21   the claimant's complaints.  *Id.*  Additionally, in determining whether a claimant is disabled, an

22   ALJ must consider lay witness testimony concerning a claimant's ability to work.  *Stout v.*

23   *Comm'r of Soc. Sec.*, 454 F.3d 1050, 1053 (9th Cir. 2006).  Lay testimony as to a claimant's

24   symptoms or how an impairment affects ability to work cannot be disregarded without comment.

25   *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996).

26

27   ORDER DENYING CROSS MOTIONS FOR SUMMARY JUDGMENT, AND GRANTING MOTION FOR
     REMAND
     Case No. 07-5322 RS

28                                                      8

1    The ALJ credited McCaa with being easily distracted, not able to focus, no interest, and

2    being depressed, but did not make any findings or address any of the symptoms reported by lay

3    persons.  The ALJ did not remark upon evidence from Dr. Venkatesh regarding the consistency

4    of McCaa's limitations and symptoms with her alleged disabilities.  (AR 310).  The ALJ also did

5    not acknowledge McCaa's claims that she had trouble talking, hearing, communicating, had

6    trouble remembering to take her medication, or had trouble sleeping.  (AR 90).  Although the

7    ALJ found that McCaa's statements were not entirely credible, the ALJ did not identify, except

8    in broad terms, what testimony was not credible and what evidence undermined McCaa's claims

9    regarding her many symptoms.  Thus, the ALJ failed to provide clear and convincing reasons for

10   rejecting claimant's testimony and erred in failing to consider and comment on the reports and

11   observations of several lay persons.

12       The Commissioner urges that this failure to consider lay witnesses be regarded as

13   harmless error in light of the lay witness' low credibility.  However, where the ALJ's error falls

14   within a failure properly  to discuss competent lay testimony favorable to the claimant, a

15   reviewing court cannot consider the error harmless unless it can confidently conclude that no

16   reasonable ALJ, when fully crediting the testimony, could have reached a different disability

17   determination.  *Stout*, 454 F.3d at 1056.  In light of the lay persons' observations regarding

18   McCaa's limited memory, low stamina, poor hygiene, mood instability, difficulty in social

19   interactions, and depression, this Court cannot make a such a finding.  (AR 93-101, 125-140).

20   Accordingly, the decision of the ALJ is remanded for further consideration of the lay persons'

21   observation/reports and claimant's symptom reporting.[4]

22

23

24       [4]      The decision to remand to the Commissioner for further proceedings is within the
     court's discretion. *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989).  If additional

25   proceedings can remedy defects in the original administrative proceeding, a social security case
     should be remanded.  *Id.*

26

27   ORDER DENYING CROSS MOTIONS FOR SUMMARY JUDGMENT, AND GRANTING MOTION FOR
     REMAND

28   Case No. 07-5322 RS
                                                     9

D.      ALJ's Exclusive Reliance on Medical Vocational Guidelines

McCaa argues that the Commissioner's decision that McCaa is capable of performing work that is available in significant numbers in the national economy is not supported by substantial evidence.  The Commissioner may carry his burden of proving that there are other jobs a claimant can perform either by calling a vocational expert or by using the Medical-Vocational rules.  *Osenbrock v. Apfel*, 240 F.3d 1157, 1162 (9th Cir. 2001).  If there are significant non-exertional limitations, however, the Medical-Vocational rules may not be used. *Id.*  In light of McCaa's significant non-exertional limitations related to her bipolar disorder, the ALJ's use of medical-vocation grids alone to support a finding that McCaa can perform other work that exists in significant numbers in the economy is improper.  Accordingly, the ALJ's finding as to step five of the sequential evaluation is remanded for consideration of additional vocational evidence.

V. CONCLUSION

For the reasons stated above, the cross motions for summary judgment are denied. McCaa's motion for remand is granted.

IT IS SO ORDERED.

Dated: November 5, 2008

_____
RICHARD SEEBORG
United States Magistrate Judge

ORDER DENYING CROSS MOTIONS FOR SUMMARY JUDGMENT, AND GRANTING MOTION FOR REMAND
Case No. 07-5322 RS